**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2985-15T4

STEPHEN JARANTOW,

    Plaintiff-Respondent,

v.

WINANT BOMACK INSURANCE AGENCY,

    Defendant-Appellant.

_____

        Argued May 23, 2017 — Decided June 13, 2017

        Before Judges Espinosa and Suter.

        On appeal from Superior Court of New Jersey,
        Law Division, Special Civil Part, Monmouth
        County, Docket No. SC-2816-15.

        Larry S. Loigman argued the cause for
        appellant.

        Stephen Jarantow, respondent, argued the cause
        pro se.

PER CURIAM

    Winant Bomack Insurance Agency (Winant) appeals a February 19, 2016 order, which denied its motion to vacate a $1733.05 judgment entered against Winant in the Special Civil Part. We reverse the judgment.

Stephen Jarantow (plaintiff) operated Priced Rite, L.L.C. (the L.L.C.), a used car business located at 2023 Route 9 in Toms River. In July 2015, he contacted Winant to obtain business insurance for the L.L.C., providing it with a check drawn on the account of the L.L.C. with the Route 9 address. Winant contacted Zurich American Insurance Company (Zurich), which issued the L.L.C. a business insurance policy effective July 31, 2015.[1] On August 18, 2015, shortly after coverage commenced, plaintiff contacted Winant to cancel the insurance. Plaintiff testified he had "to sign the dealership back to Patrick Lynch." Winant faxed plaintiff's cancellation form to Zurich, and the policy was cancelled effective August 18, 2015.

Plaintiff advised Winant, in person and by phone, that the unused insurance premium refund was to go to the L.L.C. but should be mailed to him because he was "not there anymore." Plaintiff gave Winant his post office box number. On September 12, 2015, plaintiff sent a text message confirming he had provided "my address where my refund check is to be sent" and gave a post office box in Belmar.[2]

---

[1] The record does not include a copy of the policy or any further details about the type of coverage.

[2] Plaintiff also sent a letter to Winant on September 11, 2015, but because this letter was not included in the record, we do not know its content.

Zurich issued a premium refund check for $1733.05 dated September 25, 2015, which was payable to "Priced Rite Auto Sales, L.L.C. at 2023 Route 9, Toms River," and which subsequently was negotiated although apparently not by plaintiff.

Winant sent a letter to plaintiff at his home address in November 2015 explaining that although plaintiff had stopped by their offices in late August to say "where to send the return premium," Winant had "no record . . . that [plaintiff] contacted [it] after that with an address for the return."

Plaintiff filed suit against Winant in the Special Civil Part for the amount of the refunded premium. Following trial, the court entered a judgment in favor of plaintiff against Winant for $1733.05 plus costs. The court found plaintiff to be credible, believing he had given Winant his home or post office box address. Because plaintiff "requested that the refund check be sent to him," and that did not occur, the court was "satisfied" plaintiff had "proven his case."

Winant contended there was no evidence it had received any of the refund monies from Zurich, and requested to set aside the verdict as against the weight of the evidence. The trial court denied this request, finding that Winant "was in a better position" to make sure "that any refund check was processed through their

office" and then "to relay the message on to Zurich Insurance." However, Winant "simply dropped the ball."

Winant next filed a motion to set aside the judgment or for new trial,[3] contending the insurance was for a business entity and the refund properly was directed to that entity. Further, the "carrier made the refund in accordance with the insurance regulations and in accordance with law." This motion was denied by the trial court because Winant "assumed a duty. They assumed responsibility for then sending out that money. They were acting as a middleman for Zurich Insurance."

Winant appeals the February 19, 2016 order. It claims the judgment was not supported by the facts or the law, and seeks a remand.

Our review of the trial court's order is governed by well-established principles. Factual findings that are supported by adequate, substantial and credible evidence "should not be disturbed unless '. . . they are so wholly insupportable as to result in a denial of justice.'" Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 483-84 (1974) (alteration in original). However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are

---

[3] Only the affidavit in support of the motion has been included in the record.

not entitled to any special deference." <u>Manalapan Realty v. Twp. Comm. of Manalapan</u>, 140 <u>N.J.</u> 366, 378 (1995).

We are constrained to reverse the trial court's order and to vacate the judgment. No one has disputed that the premium for the business insurance policy was paid by the L.L.C. and not by plaintiff individually. The policy and the refund check were both issued by Zurich to the L.L.C. at the Route 9 address. There is no evidence that Winant received the refund check or any of the refunded premium. We have no reason to believe the check was sent anywhere but to the L.L.C. at its address.

The trial court's conclusion that Winant should have paid the refund check to plaintiff because he asked to have the L.L.C.'s refund paid to him personally ignores the nature of the L.L.C. An L.L.C. is an independent legal entity. Its members and managers are not individually liable for debts, obligations, or liabilities of the L.L.C. <u>N.J.S.A.</u> 42:2C-30(a). The record provided no information about the membership of the L.L.C. and cited no authority to ignore that form of business organization by paying the L.L.C.'s check to one of its members.

The insurer was required to send the premium refund check to the insured. It is well established that

> upon cancellation of an insurance contract by
> either party to it, the obligation rests on
> the insurer to pay to the insured the unearned

premium called for by the terms of the policy. . . . That obligation is not met where the insurer pays its agent, intending transmittal to the insured, if the money does not ultimately reach the insured. If an insurer chooses to make such payment to someone other than the insured, it does so at its peril.

[Spilka v. S. Am. Managers, Inc., 54 N.J. 452, 464 (1969) (emphasis omitted) (citations omitted).]

This obligation is confirmed by the insurance cancellation and refund statute, which provides

[w]henever an insurance policy or contract is canceled, the insurer on notice thereof shall return to the insured, within a reasonable time not to exceed 60 days of cancellation or notice . . . on a short rate basis the amount of gross unearned premiums paid . . . .

[N.J.S.A. 17:29C-4.1.]

There is no evidence that Zurich did anything other than send the check to the L.L.C. at its address, which was consistent with this statute. Thus, there is no authority for the court's finding that Winant assumed Zurich's obligation merely because plaintiff asked to have the check mailed to his personal address. We therefore reverse the judgment, and dismiss the complaint.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2985-15T4